UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**GUILLERMO BELLO FUENTES,**

        Petitioner,

v.

        Criminal No. 2:19cr109-4
        Civil No. 2:21cv485

**UNITED STATES OF AMERICA,**

        Respondent.

**OPINION AND ORDER**

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence filed by Petitioner Guillermo Bello Fuentes ("Petitioner") pursuant to 28 U.S.C. § 2255. ECF No. 268. Petitioner's § 2255 Motion raises one claim of ineffective assistance of counsel based on his assertion that his attorney failed to advise him that his guilty plea would subject him to full restitution. Id. After reviewing the record, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons set forth below, Petitioner's § 2255 motion is **DENIED**.

        **I.   FACTUAL AND PROCEDURAL HISTORY**

On September 18, 2019, a grand jury returned a seventeen-count superseding indictment against Petitioner and five co-defendants. ECF No. 27. The indictment charged Petitioner with:

(1) one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; (2) nine counts of bank fraud, in violation of 18 U.S.C. § 1344; and (3) seven counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Id. at 1-8.

On January 8, 2020, Petitioner pled guilty, pursuant to a written plea agreement, to one count of conspiracy to commit bank fraud (Count 1), in violation of 18 U.S.C. § 1349, and one count of aggravated identity theft (Count 11), in violation of 18 U.S.C. § 1028A(a)(1). ECF Nos. 96, 97. In exchange for Defendant's guilty plea, the Government agreed to dismiss the remaining charges. ECF No. 97, at 5. Petitioner also agreed that he would be subject to mandatory restitution pursuant to 18 U.S.C. § 3663A. Id. at 4-5. During the plea hearing, the Court asked Petitioner, among other things, whether he had any questions regarding the paragraphs of the plea agreement pertaining to restitution and forfeiture. ECF No. 310-1, at 9-10. Petitioner responded under oath that he did not have any questions. Id. The Court accepted Petitioner's guilty plea, and the matter was continued for sentencing. Id. at 16-17.

On March 23, 2020, the United States Probation Office prepared a presentence investigation report ("PSR"), which noted that Petitioner "agree[d] restitution [was] mandatory pursuant to 18 U.S.C. § 3663A" and "agree[d] to the entry of a Restitution Order for the full amount of the [] losses" suffered by the "victims of

2

the conduct described in the charging instrument, statement of facts or any related or similar conduct." ECF No. 135 ¶ 4. The PSR listed the total restitution owed by Petitioner as $45,270.54. Id. ¶ 49. The United States Probation Office prepared an addendum to the PSR on August 11, 2020, which made the same notations regarding restitution. ECF No. 193 ¶¶ 4, 49.

On August 28, 2020, Petitioner was sentenced to a term of imprisonment of twenty-three (23) months on Count 1 and twenty-four (24) months on Count 11, to be served consecutively, followed by five (5) years of supervised release. ECF No. 216. On September 1, 2020, the Court entered a restitution order to which both parties had agreed by electronic signature, requiring Petitioner "to pay restitution in the amount of $45,270.54 jointly and severally with any other defendants who are ordered to pay restitution for the same losses." ECF No. 208, at 1. Petitioner did not file a direct appeal.

Because Petitioner is a native Spanish speaker with limited English proficiency, an interpreter was present to assist Petitioner each time he appeared in court in this case, including at his initial appearance, his arraignment, his plea hearing, and his sentencing. ECF Nos. 47, 59, 96, 205. Further, as explained by Petitioner's former counsel in a sworn affidavit, an interpreter was present to assist Petitioner each time he met with his counsel, both in person and on the phone. ECF No. 310-2.

On August 27, 2021, Petitioner filed the instant § 2255 motion, pro se, attacking his conviction due to ineffective assistance of counsel. ECF No. 268. The Court ordered the Government to respond, ECF No. 287, and the Government filed a response in opposition, ECF No. 310. Petitioner filed a late reply, reiterating his ineffective assistance argument and adding an argument that the Court failed to properly advise him regarding the immigration consequences of his guilty plea. ECF No. 321. Having been fully briefed, this matter is now ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner in custody may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence (1) that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) that the district court "was without jurisdiction to impose such sentence," (3) that the sentence exceeds "the maximum authorized by law," or (4) that the sentence or conviction is "otherwise subject to collateral attack." Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new proceeding, in

contrast to a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentencing determination. United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). To the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65.

Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. (quoting Mikalajunas, 186 F.3d at

5

493). As for prejudice, it is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. Mikalajunas, 186 F.3d at 492-93.

However, a § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. Strickland v. Washington,

6

466 U.S. 668, 687-88 (1984). Conclusory statements are insufficient to carry a petitioner's burden. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000))).

When evaluating counsel's performance under the first prong of the Strickland test, courts "must be highly deferential." Strickland, 466 U.S. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). Satisfying the first prong of Strickland requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's

7

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The prejudice prong is slightly modified where, as here, a petitioner challenges a conviction entered after a guilty plea; in such circumstances, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

### III. DISCUSSION

Petitioner's § 2255 motion advances an ineffective assistance of counsel claim predicated on defense counsel's purported failure to inform Petitioner that, as a consequence of his guilty plea, he would be responsible for paying full restitution.[1] ECF No. 268, at 13, 16. Petitioner's reply raises an additional argument based on the Court's purported failure to inform Petitioner that he faced mandatory (as opposed to merely possible) deportation as a consequence of his guilty plea. ECF No. 321, at 2.

---

[1] The Court observes that "by its plain terms § 2255 provides no avenue to challenge a restitution order." United States v. Mayhew, 995 F.3d 171, 183 (4th Cir. 2021). However, the Court does not understand Petitioner to be challenging the validity of the restitution order but rather the validity of his guilty plea based on his assertion that his counsel was deficient for failing to ensure Petitioner understood that he would be required to pay restitution on the full amount of the victims' losses.

8

### A. Ineffective Assistance of Counsel Claim

Petitioner's primary argument is that his guilty plea was not knowing or voluntary because defense counsel failed to advise Petitioner that, as a consequence of his guilty plea, he would be responsible for paying full restitution of $45,270.54. ECF No. 268, at 16. Petitioner asserts that he understood the plea agreement to confirm that he would only be responsible for $200 in restitution, which he understood to represent "the loss of the victim identified in count 11." Id. at 16-17. Petitioner appears to be relying on the descriptions of the charged counts in the superseding indictment, which states regarding Count 11: "Defendants and conspirators used the access device number (last four digits 8922) of R.M. to make an unauthorized withdrawal of approximately $200 from an Advantage Financial Federal Credit Union account belonging to R.M." ECF. No. 27, at 7.

However, Petitioner's claims are directly contradicted by documents in the record, including: the superseding indictment, ECF No. 27; Petitioner's plea agreement, ECF No. 97; his former counsel's sworn affidavit, ECF No. 310-2; and the transcript of Petitioner's guilty plea hearing, ECF No. 310-1. First, to the extent Petitioner relies on the superseding indictment to support his assertion that he believed he would not be responsible for restitution on Count 1 because there "was no monetary amount listed in Count One," ECF No. 268, at 16, that assertion is belied by the

9

text of the superseding indictment itself. The superseding indictment devotes <u>eight</u> paragraphs to describing the pattern of conduct that defendants were alleged to have engaged in as part of the conspiracy to commit bank fraud charged in Count 1.[2] While the superseding indictment does not set forth the <u>specific</u> monetary losses alleged, the language of the paragraphs describing Count 1 plainly encompasses the monetary losses described therein.

Second, even if Petitioner did not understand Count 1 to expose him to full restitution based on his understanding of the superseding indictment, Petitioner's plea agreement further clarified his restitution obligations. The plea agreement

---

[2] As set forth in those paragraphs, Count 1 accused Petitioner and his co-conspirators of: (1) "fraudulently obtain[ing] the personal identification and financial information of various individuals and entities, including bank, credit, and debit card account information and PIN access codes, without the consent of such individuals and entities, by various means, including the installation of skimming devices at gas station locations within the Eastern District of Virginia and elsewhere"; (2) "us[ing] such personal identification and financial information to obtain unauthorized access to the bank, credit, and debit card account information of other individuals and entities by, among other things, re-encoding account numbers, including but not limited to ATM and debit account numbers, onto the magnetic strips of other cards, and then using such re-encoded cards in combination with the corresponding PIN access codes to make unauthorized withdrawals and transfers from the bank accounts and credit accounts of other individuals and entities, thereby compromising such accounts and withdrawing and otherwise transferring funds and credit to the benefit of the conspirators"; (3) "us[ing] the personal identification and financial information recorded by the skimming devices . . . at financial institutions, including ATM locations, in several states"; (4) "us[ing] the personal identification and financial information of other individuals and entities at grocery stores, ATM locations, and other venues in and about the one-month period immediately following the date(s) on which such information was recorded by [the] skimming devices"; and (5) "travel[ing] from, through, and to the Eastern District of Virginia from locations outside the Commonwealth of Virginia in furtherance of the conspiracy and for purposes of executing, attempting to execute, and continuing the scheme and artifice." ECF No. 27, at 3-4.

repeatedly set forth the parties' agreement that Petitioner would be required to pay "full restitution" on <u>both</u> of the counts to which Petitioner pled guilty. ECF No. 97, at 1 (listing "full restitution" as one of the maximum penalties for both Conspiracy to Commit Bank Fraud and Aggravated Identity Theft); <u>id.</u> at 4 ("[Petitioner] agrees that restitution is mandatory pursuant to 18 U.S.C. § 3663A . . . [and] agrees to the entry of a Restitution Order for the <u>full amount of the victims' losses</u>." (emphasis added)). The plea agreement memorialized both the parties' recognition that determining the full scope of the victims' losses "is a complicated and time consuming process" and the parties' agreement that the Court could impose restitution after sentencing if necessary and that Petitioner "consent[ed] to the entry of any orders pertaining to restitution after sentencing without limitation." <u>Id.</u> at 5. In sum, the plea agreement made clear that Petitioner would be required to pay full restitution and that the restitution would not be limited to the preliminary loss amounts listed in Count 11 of the superseding indictment.

Third, although the Court is mindful that Defendant is not a native English speaker, his former counsel's sworn affidavit demonstrates her substantial efforts to ensure that Defendant

11

fully understood the consequences of his guilty plea.[3] In particular, counsel hired an interpreter to assist Petitioner each time they met, both in person and on the phone. ECF No. 310-2. During a multi-hour in-person meeting, an interpreter read the plea materials proffered by the Government, including the proposed plea agreement, to the Petitioner in Spanish. Id. at 1. This gave Petitioner the opportunity to fully digest and ask questions about the ramifications of pleading guilty, including that Petitioner would be subject to mandatory restitution for the full amount of the victims' losses.

Further, Petitioner's former counsel explained, through the interpreter, that the final calculation of restitution and the relevant Sentencing Guidelines would not be known until the final PSR was complete. Id. When Petitioner decided to plead guilty at the conclusion of that meeting, he was fully informed of the restitution consequences. Each time they spoke thereafter, Petitioner's former counsel again advised him (with the assistance of an interpreter) that the final calculation of restitution and the relevant sentencing Guidelines would not be known until the final PSR was complete. Id. at 2. Put simply, it is not plausible that Petitioner could have continued to believe — despite his

---

[3] Neither Petitioner's motion nor his reply brief indicates the facts provided therein are sworn under penalty of perjury. Further, Petitioner not only fails to provide an affidavit in response to his former counsel's sworn statement, but he does not appear even to challenge the accuracy of the facts recounted in that statement in his unsworn reply brief.

attorney's repeated admonitions to the contrary — that he would only be required to pay $200 in restitution rather than the full amount of the victims' losses.

Finally, the transcript of Petitioner's guilty plea hearing further undermines his claims. During that hearing, the Court carefully reviewed Petitioner's plea agreement with the parties before accepting Petitioner's guilty plea. The Court noted that each of the counts to which Petitioner intended to plead guilty included restitution among the potential penalties, ECF No. 310-1, at 6:16-25, and then explained the plea agreement's restitution requirements:

> THE COURT: Paragraph 8, Page 4. That paragraph is called [] restitution.
> Here, Mr. Bello, you agree to make restitution to any victims of your criminal conduct. If it can be determined who lost what amount as a result of your fraud, you agree to make full restitution, to make sure they're repaid in whole, and the law requires you to make full restitution.
> Do you understand this?
>
> THE DEFENDANT: Yes, sir.

Id. at 9:3-12. On the record, while under oath (and again with the assistance of an interpreter), Petitioner confirmed his understanding that, by the terms of the plea agreement, his guilty plea would subject him to <u>mandatory, full restitution</u> to the victims of his criminal conduct. Separately, Petitioner confirmed on the record that he had discussed with his attorney "each and every paragraph" of the plea agreement (including the restitution

13

paragraph) and that his attorney answered all of his questions about the agreement. Id. at 4:20-5:4.

The record therefore shows that not only did counsel repeatedly inform Petitioner he would be responsible for restitution for the full amount of the victims' losses once calculated, but also that the Court further ensured Petitioner understood this consequence before accepting his plea. See United States v. Akinsade, 686 F.3d 248, 255 (4th Cir. 2012) ("When, as here, the claim raised is that of ineffective assistance of counsel, the overall focus must be on the prejudice arising from counsel's deficient performance [but] [i]f a district court's admonishment so happens to correct the deficient performance then there is no prejudice . . . ."); see also United States v. Hernandez-Monreal, 404 Fed. App'x 714, 715 (4th Cir. 2010). Petitioner's newly asserted misunderstanding is unreasonable in light of these efforts, as further supported by the plain language of the plea agreement. Additionally, because Petitioner's factual allegations are directly contradicted by the sworn statements he made on the record, he fails to demonstrate any constitutionally deficient performance by his former counsel. See United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing,

dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). For the same reason, Petitioner has not and cannot demonstrate any resulting prejudice.

Though counsel's uncontested affidavit and Petitioner's sworn statements at the plea hearing are dispositive, the Court further notes that Petitioner offers no evidence or argument suggesting it "would have been rational under the circumstances" to proceed to trial — risking conviction on additional counts as well as a higher sentence — merely to challenge a restitution calculation that even today has not been proven erroneous. Padilla v. Kentucky, 559 U.S. 356, 372 (2010); see also United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (explaining that the relevant inquiry does not turn on the "challenger's subjective preferences" but rather on "whether proceeding to trial would have been objectively reasonable in light of all of the facts"). The Court therefore finds that Petitioner fails to satisfy either Strickland prong.

### B. Deportation Claim

Petitioner argues for the first time in his reply brief that the Court erred by advising Petitioner that he "may" face deportation due to his guilty plea, rather than advising Petitioner that deportation would be mandatory.[4]  ECF No. 321, at 2.

---

[4] Petitioner was born and raised in Cuba but came to the United States in 2015 and ultimately became a lawful permanent resident. ECF No. 193 ¶¶ 87, 90. Noncitizens convicted of certain crimes are subject to mandatory deportation under the Immigration and Nationality Act. 8 U.S.C. § 1227(a)(2).

15

Petitioner asserts that, because he was unaware that his conviction in this case "will subject [him] to immediate deportation upon his release," his guilty plea was not knowing or voluntary. Id.

As an initial matter, the Court need not consider Petitioner's deportation claim at all because, "generally, new arguments cannot be raised in a reply brief before the district court." De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022) (quoting United States v. Smalls, 720 F.3d 193, 197 (4th Cir. 2013)) (cleaned up). However, even if Petitioner's second argument were properly before the Court, it would fail both procedurally and on the merits. Thus, the Court addresses this argument here "for the sake of thoroughness." See United States v. Nichols, No. 3:06cr199, 2015 WL 4095783, at *3 (E.D. Va. July 7, 2015).

First, Congress and the President have established a one-year limitations period within which a petitioner must file a § 2255 motion. 28 U.S.C. § 2255(f). The one-year limitations period begins running on the latest of four dates, only one of which is relevant here: the "date on which the judgment of conviction becomes final." Id. Because Petitioner did not file a direct appeal, his conviction became final fourteen days after the Court entered the judgment of conviction on August 28, 2020. See ECF No. 216; Fed. R. App. P. 4(b)(1)(A). Although Petitioner's § 2255 motion (which raised only his ineffective assistance of counsel claim) was filed within the one-year limitations period, his

16

deportation argument (raised for the first time in his reply brief more than six months after the expiration of the one-year limitations period) was not. As such, this argument is untimely.

Second, Petitioner's deportation argument is independently barred by the doctrine of procedural default. As explained above, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." Pettiford, 612 F.3d at 280 (quoting Mikalajunas, 186 F.3d at 492-93). Unlike Petitioner's ineffective assistance claim, his deportation claim needed first to have been raised on direct appeal, but Petitioner did not file such an appeal. Because Petitioner has shown neither "cause" excusing his failure to raise this claim nor "actual prejudice" from the claimed error,[5] his deportation claim is procedurally defaulted.

Finally, even if Petitioner's deportation claim were properly before this Court, it nonetheless would fail on the merits. Rule 11 of the Federal Rules of Criminal Procedure provides in relevant part that, "[b]efore the court accepts a plea of guilty . . . ,

---

[5] It is not enough for a petitioner to demonstrate "a possibility of prejudice," but rather, he must show that errors "worked to his actual and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Petitioner has made no such showing.

17

the court must inform the defendant of, and determine that the defendant understands . . . that, if convicted, a defendant who is not a United States citizen <u>may be</u> removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O) (emphasis added). During Petitioner's plea hearing, the Court conducted the following discussion of the potential immigration consequences of Petitioner's guilty plea:

> THE COURT: Okay. . . . Let us turn to the Plea Agreement. First I need to ask this question: Is Mr. Bello an American citizen?
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: Okay. Mr. Bello, the Court simply advises you that the Court doesn't know whether your plea of guilty may affect your immigration status.
>
> THE DEFENDANT: Okay.
>
> THE COURT: In other words, it could cause you to be removed from the United States, deported, or have some other impact.
>
> THE DEFENDANT: Yes.
>
> THE COURT: But this Court has nothing to do with whether that happens or not.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had this discussion about his immigration status with him, [Defense Counsel]?
>
> [DEFENSE COUNSEL]: Yes, sir. I've even advised him and set him an appointment with an immigration attorney to discuss the ramifications of this Plea Agreement.

>           THE COURT: Okay. That being the case, we're
> prepared to go forward.

ECF No. 310-1, at 5:13-6:10.

As this transcript demonstrates, the Court advised Petitioner that his guilty plea "could cause [him] to be removed from the United States, [i.e., to be] deported," and Petitioner confirmed that he understood. In doing so, the Court met its burden under Rule 11 to inform Petitioner that he "may be removed from the United States" as a consequence of his guilty plea. Fed. R. Civ. P. 11(b)(1)(O). Contrary to Petitioner's assertion, the Court was not required to advise him that deportation would be "mandated by law." ECF No. 321, at 2. Such a requirement would go beyond the scope of Rule 11 and would require the Court to act as Petitioner's counsel.[6] Therefore, the Court finds that Petitioner's deportation argument fails both procedurally and on the merits.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DENIED**. Because the Court finds that Petitioner has not made a "substantial showing of the denial of a constitutional right," a

---

[6] The Court notes that the Fourth Circuit has held that the failure of a defendant's attorney to advise their non-citizen client that a conviction will result in mandatory deportation can constitute ineffective assistance of counsel under Strickland. United States v. Murillo, 927 F.3d 808, 819 (4th Cir. 2019). Here, however, Petitioner does not assert that his former counsel failed to advise him about the immigration consequences of his guilty plea and, moreover, Petitioner's counsel informed the Court at Petitioner's plea hearing that she had "advised" Petitioner regarding immigration issues and had scheduled a meeting for him with immigration counsel. ECF No. 310-1, at 6:4-10.

19

certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and counsel of record for the Government.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 2, 2023